JOHN S. LEONARDO
United States Attorney
District of Arizona
CHARLES A. DAVIS
Assistant U.S. Attorney
Arizona State Bar No. 014386
405 W. Congress, Suite 4800
Tucson, Arizona 85701-5040
Telephone:  (520) 620-7300
charles.davis2@usdoj.gov
Attorneys for Plaintiff United States of America

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          vs.<br><br>0.768  Acres  of  Land,  More  or  Less, Situate  in  Cochise  County,  State  of Arizona; Wildridge Development, LLC, A California LLC; et al.,<br><br>                    Defendants. | **4:13-CV-00508-TUC-DTF<br>Tract TUC-NAC-0400E**<br><br>***EX PARTE* MOTION FOR ORDER OF DELIVERY OF POSSESSION** |

Now comes Plaintiff, the United States of America, and moves this Honorable

Court for an order requiring all defendants to this action, and any and all persons in

possession or control of the property described in the Complaint and Declaration of

Taking filed herein, to immediately surrender possession of the said property, to the

extent of the estate to be condemned, to the United States.  The United States is

seeking this Order on an *ex parte* and expedited basis.  In support of this Motion, the

United States respectfully submits the following Memorandum of Points and Authorities

and the attached Declaration of Loren Flossman (Exhibit 1).

/ / /

/ / /

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF AN ORDER FOR DELIVERY OF POSSESSION**

## I.  INTRODUCTION

The United States is requesting an expedited Order granting immediate possession to the extent of the estate condemned.   Acquiring this property is a necessary step in implementing the congressional directive, set forth in the Complaint and Declaration of Taking, to secure the border between the United States and Mexico. Time is of the essence.   Accordingly, the United States respectfully requests this Court to enter an Order of Immediate Possession on an *ex parte* and expedited basis.

## II.  BACKGROUND FACTS

Pursuant to the Declaration of Taking Act, 40 U.S.C. § 3114, and Federal Rule of Civil Procedure ("Rule") 71.1 (formerly Rule 71A), the United States filed a Complaint and a Declaration of Taking, together with a deposit of estimated just compensation, to acquire an interest in the subject property.   The United States will use this property to construct, install, operate, and maintain a border security tower, along with all necessary and related structures and roads, designed to help secure the United States border within the State of Arizona.   *See* Declaration of Taking (Dkt #1), Schedules "B" and "E".

Funding to acquire the interest sought in this action was appropriated pursuant to the Act of Congress approved April 15, 2011, as Public Law 112-10, Division B, Title VI, 125 Stat. 38.   *See* Declaration of Taking (Dkt #1), Schedules "A".   The United States has deposited $ 576.00 as estimated just compensation.

## III.  ARGUMENT AND AUTHORITIES

**A.     Because It Has Acquired this Property Under the Declaration of Taking Act, the United States Is Entitled to Immediate Possession**

The United States initiated this case by filing a Complaint and a Declaration of Taking and depositing estimated just compensation into the registry of the Court, as required by the Declaration of Taking Act ("Act"), 40 U.S.C. § 3114 (formerly 40 U.S.C.

§ 258a).  The filing and deposit immediately vest title to the acquired property in the United States.  *See* 40 U.S.C. § 3114(b)(1).  The Act specifically provides that upon the filing of the declaration of taking, "the court may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner . . . ."  40 U.S.C. § 3114(d)(1).

The purpose of the Declaration of Taking Act is to give the government immediate possession of the property and give the owner immediate compensation, in the form of estimated compensation, in return for title to the land.  *United States v. Miller,* 317 U.S. 369 (1943).  As the Court explained:

> The purpose of the statute is twofold.  First, *to give the Government immediate possession of the property* and to relieve it of the burden of interest . . . .  Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property.

*Id.* at 381 (emphasis added).  The transfer of title is immediate upon the filing of the declaration and deposit of estimate just compensation.  *See, e.g.*, *Catlin v. United States,* 324 U.S. 229, 238 (1945) (holding that a landowner may not delay or prevent the vesting of title by an interlocutory appeal).

The Supreme Court reaffirmed that the Declaration of Taking Act immediately confers to the United States title and a right to possession in *Kirby Forest Industries, Inc. v. United States,* 467 U.S. 1 (1984).  There it reviewed the methods by which the United States may appropriate property, primarily comparing use of a declaration of taking with a "straight-condemnation" proceeding.  *Id.* at 3-5.  In a "straight condemnation" the United States only files a complaint in condemnation and only acquires title after the determination and payment of just compensation.

In contrast, the Court noted that the Declaration of Taking Act is "[a] more expeditious procedure . . . ."  *Id.*  The Court held that upon the filing of a declaration of taking and deposit of estimated just compensation, "[t]itle and right to possession thereupon vest immediately in the United States."  *Id.* at 5.  It later explained, in further

distinguishing a "straight-condemnation" case from one brought under 40 U.S.C. § 3114, that the adoption of the Declaration of Taking Act was "for the purpose of affording the Government the option of peremptorily appropriating land prior to final judgment, thereby permitting immediate occupancy . . . ."  *Id.* at 12.  Finally, as stated in *Narramore v. United States*, 960 F.2d 1048, 1050 (Fed Cir. 1992), Congress enacted the Declaration of Taking Act "[t]o give the Federal Government immediate possession of condemned property and to avoid delays in federal construction projects."  *Id.*

Accordingly, because the United States has acquired the property at issue under the Declaration of Taking Act, the United States is entitled to immediate possession of the property.  *See Miller*, 317 U.S. at 381; *Kirby Forest Indus.*, 467 U.S. at 5, 12.

**B.  The Ninth Circuit Has Specifically Approved Entry of Ex Parte Orders of Possession for Property Acquired Under the Declaration of Taking Act**

The Fifth and the Ninth Circuits have specifically approved entry of *ex parte* orders of possession of the estate taken.  In *United States v. 0.95 Acres of Land*, 994 F.2d 696 (9th Cir. 1993), the United States had filed a declaration of taking and deposited estimated just compensation in order to acquire privately owned roads adjacent to a national forest.  *Id.* at 697.  An *ex parte* order of possession was granted.  The landowners then moved to vacate the declaration of taking and order of possession, based on the government's non-compliance with the National Environmental Policy Act ("NEPA").  The district court granted the landowners' motion and the government appealed.  The Ninth Circuit reversed, holding that non-compliance with NEPA was not a defense to a taking.  *Id.* at 699.  In so holding, the appellate court specifically recited the procedure to be followed in granting an order of possession:

> In this type of condemnation proceeding, the United States files a declaration of taking in the district court pursuant to the Declaration of Taking Act, 40 U.S.C. § 258A et seq., and deposits funds with the district court.  *The district court may then enter an* ex parte *order of possession.* At approximately the same time, the United States files a complaint . . . . The private property owner may now answer.  The decision of the trial court that the United States has the right to possession of the property under a declaration of taking is not a final, appealable decision.

994 F.2d at 698 (citing *Catlin,* 324 U.S. at 232) (emphasis added).  Thus, the Ninth Circuit in this 1993 opinion described as an appropriate procedure the entry of an *ex parte* order of possession.

Other circuits have similarly approved the entry of an *ex parte* order of possession once the government files a Declaration of Taking and deposits estimated just compensation with the court.  For example, the Fifth Circuit gave its approval of the entry of *ex parte* orders of possession in declaration of taking cases in *United States v. 131.68 Acres of Land*, 695 F.2d 872 (5th Cir. 1983).  There, the United States filed a complaint with a declaration of taking, together with estimated just compensation, in order to acquire, part in fee and part in permanent easement, 131.68 acres out of a 586-acre tract of crop land.  On the same day that the complaint was filed, the district judge, without a hearing, entered an order granting the United States possession.  The landowners and lessees appealed, arguing that the trial court erred in denying them a hearing before dispossessing them.  The Fifth Circuit upheld the action of the district court, with Judge Higginbotham writing:

> The landowners and the lessees maintain that both the Congress and the Constitution secured their "right" to a hearing before they were dispossessed of  their land.  We disagree.  The Fifth Amendment does not afford them such a right.  "The question on which issue is joined is whether the government may   exercise its eminent domain power consistently with the Fifth Amendment by physically seizing property without prior notice, hearing, or compensation.  The answer to this question is yes."

*Id.* at 876 (quoting *Stringer v. United States,* 471 F.2d 381, 383 (5th Cir. 1973)).

Here, in keeping with the decisions in *0.95 Acres of Land* and *131.68 Acres of Land*, this Court should similarly grant the United States an *ex parte* order of possession.  *See 131.68 Acres of Land*, 695 F.2d at 872, 876; *0.95 Acres of Land*, 994 F.2d at 696-98.  This action and immediate possession are necessary for the United States to construct roads, fencing, and other security measures designed to help secure the United States/Mexico border within the State of Arizona.  Based upon these facts and the case law, it is proper for this Court to grant possession to the United States.

1
2

**C.**     <u>**The United States Needs Immediate Possession in Order to Meet Congressional Directive**</u>

3

      The United States needs immediate possession of the subject property to further

4 the congressional directive to construct fencing and related infrastructure along the

5 southwest border. Illegal Immigration Reform and Immigrant Responsibility Act of 1996

6 ("Illegal Immigration Act"), Public Law 104-208, Div. C, 110 Stat. 3009-546, 3009-554

7 (Sept. 30, 1996), codified as amended by the REAL ID Act of 2005, Public Law 109-13,

8 Div. B, 119 Stat. 231, 302, 306 (May 11, 2005), the Secure Fence Act of 2006, Public

9 Law 109-367, § 3, 120 Stat. 2638 (Oct. 26, 2006), and the Consolidated Appropriations

10 Act of 2008, Public Law 110-161, Div. E, Title V, § 564, 121 Stat. 2090 (Dec. 26, 2007),

11 at 8 U.S.C. § 1103 and note.

12

      The United States needs to acquire the subject property in order to begin the

13 construction required to comply with Congress' directive.  Exhibit 1, Affidavit of Loren

14 Flossman in Support of Motion for Immediate Possession.  Acquiring immediate

15 possession of the property for the United States is a necessary step toward

16 commencement of construction.  *Id.*  United States Customs and Border Protection has

17 determined that the subject property is an appropriate location for roadway installation

18 of and access to a border surveillance tower and associated facilities.  *Id.*  The purpose

19 of the tower project is to improve the agency's detection, identification, and

20 apprehension of cross-border violators in this geographic area.  *Id.*  The tower will

21 provide the agency with information that will allow for a more focused, efficient and

22 effective use of Border Patrol resources in the interdiction of cross-border violators.  *Id.*

23

      Because of the United States' demonstrated need for immediate access, this

24 Court should grant immediate possession of the interest sought.

25 */ / /*

26
27
28

1

**IV.  CONCLUSION**

2

Based on the foregoing, the United States of America submits that it is entitled to

3

entry of an order of immediate possession as requested in its motion.

4

5

Respectfully submitted this 19th day of June, 2013.

6

7

JOHN S. LEONARDO
United States Attorney
District of Arizona

8

9

*s/Charles A. Davis*
CHARLES A.DAVIS
Assistant U.S. Attorney

10

11

Copy of the foregoing served electronically

12

or by other means this 19th day of June 2013, to:

13

Wesley Polley
Attn: Todd Polley

14

3545 W. 8th Street

15

Thatcher, AZ  85552

16

R.A.H., Inc
Post Office Box 2491

17

Sierra Vista, Arizona 85635

18

Cochise County Treasurer

19

1415 Melody Lane
Building E

20

Post Office Box 1778

21

Bisbee, Arizona 85603

22

*s/Mary McClain*

23

24

25

26

27

28

# EXHIBIT 1

THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) AFFIDAVIT IN SUPPORT OF |
| | ) MOTION FOR IMMEDIATE POSSESSION |
| | ) TO CONSTRUCT |
| vs. | ) |
| | ) CIVIL NO. |
| 0.768 ACRES OF LAND, MORE OR LESS, | ) |
| | ) |
| SITUATE IN COCHISE COUNTY, STATE OF | ) |
| | ) |
| ARIZONA, AND WILDRIDGE DEVELOPMENT, LLC, A | ) |
| | ) |
| CALIFORNIA LIMITED LIABILITY COMPANY, ET | ) |
| | ) |
| AL., | ) |
| | ) |
| | ) |
| | ) |

I, Loren Flossman, hereby declare as follows:

1.     I am employed as the Director, Border Patrol Facilities and
Tactical Infrastructure Program Management Office, Facilities
Management and Engineering, Office of Administration with U.S.
Customs and Border Protection ("CBP"). I make this declaration
based on my personal knowledge of the matters recited, or based
upon information available to me from the files maintained by my
office in this matter.

2.     The United States has a vital interest in controlling its
international borders.  As part of the ongoing effort to secure
the borders and reduce illegal immigration, Congress has

directed the construction of fencing, additional physical barriers, roads, lighting, cameras, sensors and related infrastructure along the United States' southwestern border. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Public Law 104-208, Div. C, 110 Stat. 3009-546, 3009-554 (Sept. 30, 1996), codified as amended by the REAL ID Act of 2005, Public Law 109-13, Div. B, 119 Stat. 231, 302, 306 (May 11, 2005), the Secure Fence Act of 2006, Public Law 109-367, § 3, 120 Stat. 2638 (Oct. 26, 2006), and the Consolidated Appropriations Act of 2008, Public Law 110-161, Div. E, Title V, § 564, 121 Stat. 2090 (Dec. 26, 2007), at 8 U.S.C. § 1103 and note.

3.   My agency has determined that the subject property is an appropriate location for the construction of a road that is needed to access a border security tower and associated facilities. The purpose of this tower project is to improve CBP's detection, identification, and apprehension of cross-border violators in this geographic area.  Specifically, this tower will provide CBP with information that will allow for a more focused, efficient and effective use of Border Patrol resources in the interdiction of cross-border violators.

4.    There are two separate, but interdependent, contractual arrangements related to this tower project.  One contract relates to the acquisition and installation of the technology and equipment that will be installed on the tower.  The other contractual arrangement relates to road construction, site work, and tower erection activities.  The road construction on the subject property must be completed before the technology and equipment can be installed and put into operation.  Accordingly, if possession is not granted by June 14, 2013, the United States may incur delays in constructing and completing this important border security project

I declare, pursuant to 28 U.S.C. § 1746, that the above information is true and correct to the best of my knowledge, information and belief, under penalty of perjury.  I further declare that this Declaration was executed on this 5th day of June, 2013, in Washington, D.C.


Loren Flossman